## LIPSETT WRECKING & SALVAGE CORPORATION v. JOSEPH REID GAS ENGINE CORPORATION.

### No. 8138.

Circuit Court of Appeals, Third Circuit.

Argued Feb. 19, 1943.

Decided Aug. 17, 1943.

848

Arthur B. Hyman, of New York City (Joseph S. Rosenbaum, of Pittsburgh, Pa., on the brief), for appellant.

T. F. Ryan, of Pittsburgh, Pa. (Joseph H. Bialas and Bialas & Ryan, both of Pittsburgh, Pa., and Judson E. Trax, of Oil City, Pa., on the brief), for appellee.

Before BIGGS, JONES, and GOODRICH, Circuit Judges.

BIGGS, Circuit Judge.

The plaintiff, Lipsett Wrecking & Salvage Corporation, has sued the defendant, Joseph Reid Gas Engine Corporation, for failure to deliver merchandise in accordance with a contract which it asserts it made with the defendant by reason of a bid at a public auction held by the defendant at its plant at Oil City on May 1, 1941. The court below gave judgment for the defendant. The plaintiff has appealed.

The plaintiff's bid was on item 913 of the auctioneer's catalogue. The item was as follows: "2000 Tons Gas, Oil and Diesel Engine Castings, Gasoline Connecting Rods, Piston Rods, Steel Crankshafts, Cylinders and Cylinder Heads, Flywheels, Gears, Housings, Crank Cases, Gasoline Motor Parts, Large Cast Iron Foundry Flasks, Miscellaneous Parts, and Scrap, Jigs, Dies and Fixtures, and all Scrap Steel and Iron throughout Plant." The item was preceded immediately in the catalogue by a note in these terms *"Particular notice is called to the various places in which this lot (No. 913) is located. Delivery will be made to the purchaser by seller wherever located and only those items specifically designated by the seller as being in this lot will be delivered to the purchaser."* As to "Counts, Weights and Measures", the catalogue stated: "This Catalogue has been made and checked from the Plant records and from an examination of the properties * * *. Where sold by weight * * * final payment is made for material actually delivered." In respect to "Terms and Conditions of Sale of Personal Property" the catalogue provided: "Sale by Estimated Weight, Count or Measure.—In cases where items are sold by estimated weight, count or measure, the purchaser will be billed for and required to pay for the estimated weight, count or measure, the purchaser will be required to take such excess at the rate of purchase." The catalogue stated in respect to "Responsibility for Non-Delivery" that "The Auctioneers shall not in any event be liable for non-delivery or for any other thing to any purchaser of any lot other than for the return to the purchaser of the deposit or sum paid on said lot."

The articles comprising item 913 were contained in a number of piles stationed at various places in the defendant's plant. Some of the articles in these piles possessed value only as scrap metal. Some, however, were of use for replacing parts

in the engines manufactured by the defendant. The court below found as a fact that when item 913 was about to be sold, the auctioneer read and explained the note we have quoted, and stated also that the defendant reserved the right to remove from the item some of the materials contained in the piles and that the designation of such items would be made by the defendant after the sale.

The plaintiff was the high bidder at the sale for the item, bidding 96¢ per cwt. or the sum of $38,400. It had made a deposit of $2,500 before bidding. After the sale it paid down $20,000 more. When the plaintiff went to the plant to remove the property which it asserts it had purchased, it found that the defendant had removed or was in the course of removing some of the most valuable parts of it; viz., the articles which might be used for replacement of engine parts. The defendant continued to remove articles until, according to the plaintiff, the metal which was left possessed no value save as scrap. It appears that the defendant took from the piles comprising item 913 as they were prior to the bidding " * * * about 250 Tons of material suitable for supplying parts and service for Reid engines * * * " of about the value of $8,400.[1] The metal which the plaintiff received amounted to about 804 tons. The auctioneer refunded to the plaintiff the sum of $4,550[2] in accordance with the provisions of the catalogue relating to "Sale by Estimated Weight * * *." The plaintiff's bid of 96¢ per cwt. was about $8.20 a ton in excess of the scrap value of the metal and we think it must be conceded that the plaintiff believed it was buying not only scrap metal but also some replacement parts for engines.

The court below treated the plaintiff's suit as if it were an action of trover for conversion and found that there was no conversion and that therefore there could be no recovery of damages by the plaintiff. Forms of action are no longer important, however. The question which must be determined is whether the plaintiff has stated and proved any cause of action upon which it is entitled to recovery.

It should be observed that the catalogue stated that item 913 was of 2000 tons weight. There was no warranty or guaranty of this weight by the defendant, but, as we have said, the auctioneer's catalogue was made and checked from the plant records and from an examination of the properties. Assuming as the court below found that the defendant took from item 913 about 250 tons of metal after the sale and that the plaintiff received about 850 tons, the total tonnage of item 913 would then be about 1050 tons. This is considerably less than 2000 tons and the plaintiff's witnesses testified that they had examined the piles and that they could not be more than 8% out of the way on their estimates. But as to tonnage the plaintiff was protected by the provisions of the catalogue relating to "Sale by Estimated Weight * * *." Since item 913 weighed less than the estimate of the catalogue the purchaser was entitled to a refund for the shortage at the rate of purchase. The plaintiff received this refund from the auctioneer.

The real gravamen of the plaintiff's charge is that the defendant abstracted from the piles the valuable engine-replacement parts which the plaintiff's witnesses estimated to be about at least 20% of the articles of item 913. Let us assume that this estimate is correct.[3] The note preceding item 913 is very plain. It stated categorically that " * * * only those items specifically designated by the seller as being in this lot will be delivered to the purchaser." In view of the note we are unable to perceive how the plaintiff could be entitled to damages because it did not receive articles which, after the sale, were not "specifically designated" by the defendant as being in item 913. The articles which the plaintiff was entitled to receive under its bid were only those articles which were so specifically designated.

No matter how the form of action is cast we can see no way in which the plaintiff is entitled to maintain it under the proof offered. The plaintiff has not alleged that the defendant was guilty of fraud. It has not sought to rescind the contract, but on the contrary has elected to proceed under it and to remove the metal. The plaintiff does not assert that there was no contract between itself and the defendant because of a substantial failure

---

[1] Finding of Fact No. 7.
[2] Finding of Fact No. 6.
[3] It is not clear whether this witness meant that 50% or 20% of the articles in the piles were of special value. Compare this testimony p. 75a with that transcribed at p. 76a. We have taken the lower figure.

of consideration or failure of the parties to agree on terms. The plaintiff asserts merely that the defendant breached the contract by failing to deliver all of the articles from item 913 which were in the piles prior to the sale, or in the alternative, that the defendant was guilty of conversion in removing from the piles articles which it, the plaintiff, asserts it had purchased.

We agree with the court below that the defendant was guilty of practices far too sharp for approval. The parties dealt at arm's length. The conditions of sale were express. The plaintiff apparently thought that the defendant would not remove the valuable articles from the piles, though the catalogue stated plainly that the defendant would sell only those articles which it did not reserve to itself. Title did not pass until the defendant made its reservations. It follows, as the district court found, that an action of trover cannot be maintained. There was no contract between the defendant and the plaintiff to sell the contents of item 913 as they were at the time of the bidding. Therefore there was no breach of contract. It is the law of Pennsylvania as to sales at auction that there is no warranty save warranty of title. Wisneski v. Kravitz, 33 Luz.L.F.Reg.Rep., Pa., 208. It is also the law of that state that the terms of a sale at auction are binding upon the bidder. Hunsberger v. Hartzell, 1 Montg., Pa., 66. The maxim caveat emptor is peculiarly applicable to sales at public auction.

The judgment will be affirmed.